## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| STEWARD HEALTH CARE SYSTEM LLC, et al., | § | Case No. 24-90213 (CML) |
| | § | (Jointly Administered) |
| Debtors.[1] | § | |
| —————————————————— | § | |
| | § | |
| MARK KRONFELD, AS TRUSTEE OF THE SHC CREDITOR LITIGATION TRUST, | § | Adv. Pro. No. 25-03593 (CML) |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| RALPH DE LA TORRE, MICHAEL CALLUM, JAMES KARAM, MARK RICH, SANJAY SHETTY, STEWARD HEALTH CARE INVESTORS LLC, STEWARD HEALTH CARE INTERNATIONAL S.L., SPARTA HOLDING CO. LLC, MULLET II LTD., MULLET II LLC, 5326 OLD BUENA VISTA ROAD LLC, RDLT – SHCI INVESTOR LLC, TENET HEALTHCARE CORPORATION, AND SEBRIEL LLL, | § | |
| | § | |
| Defendants. | § | |
| —————————————————— | | |

## THE TRUSTEE'S OPPOSITION TO TENET HEALTHCARE CORPORATION'S
## MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

---

[1] A complete list of the Debtors in these Chapter 11 Cases may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Steward. The Debtors' service address for these Chapter 11 Cases is 1900 N. Pearl Street, Suite 2400, Dallas, Texas 75201.

### TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 5

   I.    THE FAC NEED ONLY ALLEGE A PLAUSIBLE CLAIM FOR RELIEF. ................ 5

  II.   THE FAC PLAUSIBLY ALLEGES A CLAIM FOR CONSTRUCTIVE
       FRAUDULENT TRANSFER UNDER THE TEXAS UNIFORM FRAUDULENT
       TRANSFER ACT. .......................................................................................... 6

       A.   The FAC Plausibly Alleges That SHC System Did Not Receive Reasonably
           Equivalent Value in Return from Tenet. ........................................................... 7

       B.   The FAC Plausibly Alleges That SHC System Was Financially Impaired at
           the Time of the Transfer. ............................................................................ 10

           1.   The Trustee's Financial Impairment Allegations Are Sufficient and
               Easily Satisfy Rule 8(a) ........................................................................ 10

           2.   The Court Should Reject Tenet's Misconstruction of the Statutory
               Pleading Burden About SHC System's Unreasonably Small Assets. ............. 11

           3.   The Court Should Reject Tenet's Arguments Regarding SHC System's
               Inability to Pay Debts as They Came Due. .................................................. 13

 III.  TENET CANNOT AND HAS NOT ESTABLISHED THE IMPLAUSIBILITY OF
       THE FAC'S ALLEGATIONS BY ITS EXTRA-COMPLAINT DOCUMENTS. ........ 14

       A.   There Are Limited Instances When Extra-Complaint Documents Can Be
           Considered on a Motion to Dismiss, and Even Then for Only Limited
           Purposes. ............................................................................................... 15

           1.   Documents Incorporated in the Complaint. .................................................. 15

           2.   The Scope of Facts Subject to Judicial Notice Is Limited. ............................. 16

           3.   Judicial Estoppel Applies Only Rarely. ...................................................... 17

       B.   The Extra-Complaint Documents Do Not Support Dismissal. ............................. 19

           1.   Tenet's Tax Forms Should Not Be Considered and Do Not Establish
               Value. ................................................................................................. 19

           2.   The Delaware Decisions Should Not Be Considered and Do Not Establish
               Value.. ................................................................................................ 20

           3.   SHC System's Prior Statements About Its Financial Condition Do Not
               Estop the Trustee. ................................................................................. 22

               a.   The Pre-Bankruptcy Statements in the CFO Affidavit and the
                   Delaware Hearing Transcript. ............................................................. 23

          b.    The Debtors' Prior Statements at the Commencement of the Bankruptcy Proceedings Cannot Be Considered and Provide No Basis for Estoppel. ..............................................................................24

    4.    The DIP Term Sheet, the Bankruptcy Hearing Transcript, and the MPT Complaint Do Not Establish the Value of the Miami Hospitals. .....................25

    5.    Tenet's Own SEC Filing Provides No Basis to Contradict the FAC's Allegations or Establish Facts. .........................................................26

    6.    The Court Cannot Take Judicial Notice of Alpha Spread's Webpage. ...........27

IV.   THE DISALLOWANCE CLAIM IS TIMELY. ............................................................28

V.    THE COURT SHOULD ALLOW THE TRUSTEE THE OPPORTUNITY TO AMEND IF THE COURT DETERMINES TO DISMISS THE TUFTA CLAIM AGAINST TENET. ....................................................................................29

VI.   THE CLAIMS AGAINST TENET CANNOT BE DISMISSED BASED ON ALLEGED IMPROPER JOINDER. ...........................................................30

**CONCLUSION** ..........................................................................................**31**

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acevedo v. Allsup's Convenience Stores, Inc.*,
  600 F.3d 516 (5th Cir. 2010) ....................................................................31

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................6

*Blanco v. Bayview Loan Servicing LLC (In re Blanco)*,
  633 B.R. 714 (Bankr. S.D. Tex. 2021) .....................................................17

*In re: Blixseth*,
  514 B.R. 871 (D. Mont. 2014), *aff'd in part, rev'd in part on other grounds*,
  679 Fed. Appx. 611 (9th Cir. 2017).........................................................12

*Bowman v. El Paso CGP Co., L.L.C.*,
  431 S.W.3d 781 (Tex. App. 2014)...............................................................7

*Challenger Gaming Sols., Inc. v. Earp*,
  402 S.W.3d 290 (Tex. App. 2013)...............................................................7

*Daniels v. Equitable Life Assur. Soc. of U.S.*,
  35 F.3d 210 (5th Cir. 1994) .......................................................................21

*Matter of Davis*,
  889 F.2d 658 (5th Cir. 1989) .....................................................................28

*Gabarick v. Laurin Mar. (Am.) Inc.*,
  753 F.3d 550 (5th Cir. 2014) .....................................................................18

*Garcia Grain Trading Corp. v. Plascencia, Sr. (In re Garcia Grain Trading Corp.)*,
  Adv. No. 23-7002, 2024 WL 3170630 (Bankr. S.D. Tex. June 24, 2024) ...............................7

*GlobeRanger Corp. v. Software AG*,
  27 F. Supp. 3d 723 (N.D. Tex. 2014), *aff'd sub nom. GlobeRanger Corp. v. Software AG United States of Am., Inc.*, 836 F.3d 477 (5th Cir. 2016)...................................18

*Goines v. Valley Cmty. Servs. Bd.*,
  822 F.3d 159 (4th Cir. 2016) .....................................................................23

*Goodman v. Hewlett-Packard Co.*,
  No. 4:16-CV-3195, 2017 WL 2859805 (S.D. Tex. June 13, 2017), *report and
  recommendation adopted*, No. 4:16-CV-3195, 2017 WL 2844032 (S.D. Tex.
  June 30, 2017) ..................................................................................................................17

*Guffy v. Brown (In re: Brown Med. Ctr., Inc.)*,
  552 B.R. 165 (S.D. Tex. 2016) ........................................................................................10

*In re Hinsley*,
  201 F.3d 638 (5th Cir. 2000) .............................................................................................7

*In re IFS Financial Corp.*,
  No. 02-39553, 2008 WL 4533713 (Bankr. S.D. Tex. Oct. 2, 2008).................................28

*Imperium (IP) Holdings, Inc. v. Apple Inc.*,
  No. 4:11-CV-163, 2012 WL 461775 (E.D. Tex. Jan. 20, 2012), *report and
  recommendation adopted*, No. 4:11-CV-163, 2012 WL 461802 (E.D. Tex.
  Feb. 13, 2012) ..................................................................................................................31

*Jetpay Merch. Servs., LLC v. Miller*,
  No. CIV.A. 3:07CV0950-G, 2007 WL 2701636 (N.D. Tex. Sept. 17, 2007) ........................11

*Johnston v. Dexel*,
  373 F. Supp. 3d 764 (S.D. Tex. 2019) .............................................................................17

*Kartzman v. Latoc, Inc. (In re: the Mall at the Galaxy, Inc.)*, Adv. Pro. No. 12-
  1769 VFP, 2019 WL 1522703 (Bankr. D.N.J. April 4, 2019), *aff'd in part,
  rev'd in part on other grounds and remanded sub nom., In re Mall at the
  Galaxy*, No. 2:19-CV-10340, 2020 WL 1847667 (D.N.J. Apr. 9, 2020) ..............................12

*Kaye v. Lone Star Fund V (U.S.), L.P.*,
  453 B.R. 645 (N.D. Tex. 2011)......................................................................................7, 16

*Matter of Life Partners Holdings, Inc.*,
  926 F.3d 103 (5th Cir. 2019) ...........................................................................................28

*U.S. ex rel. Long v. GSDMIdea City, L.L.C.*,
  798 F.3d 265 (5th Cir. 2015) ...........................................................................................18

*Magaraci v. Espinosa*,
  No. 03-14-00515-CV, 2016 WL 858989 (Tex. App. Mar. 4, 2016) ......................................12

*Manix Energy, Ltd. V. James (In re James)*,
  300 B.R. 890 (Bankr. W.D. Tex. 2003)..............................................................................17

*Meador v. Oryx Energy Co.*,
  87 F. Supp. 2d 658 (E.D. Tex. 2000) ...............................................................................21

*In re Miller*,
   347 B.R. 48 (Bankr. S.D. Tex. 2006) .................................................................23

*NGM Ins. Co. v. Bexar Cnty., Texas*,
   211 F. Supp. 3d 923 (W.D. Tex. 2016).............................................................18

*Osherow v. Charles (In re Wolf)*,
   Adv. No. 16-030020-HCM, 2016 WL 4940198 (Bankr. W.D. Tex. Sept. 15,
   2016), *subsequently aff'd*, 697 F. App'x 317 (5th Cir. 2017)....................................8

*Pac. Century Int'l, Ltd. v. Does 1-37*,
   No. CV H-11-4430, 2012 WL 13055464 (S.D. Tex. Mar. 27, 2012).....................................30

*Pac. Summit Energy LLC v. WP&G Holdings, LLC*,
   No. 4:24-CV-00648, 2025 WL 963589 (S.D. Tex. Mar. 31, 2025) ..........................................5

*Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*,
   9 F.4th 247 (5th Cir. 2021) ...................................................................16, 17

*In re Porras*,
   312 B.R. 81 (Bankr. W.D. Tex. 2004).................................................................21

*Reed v. City of Arlington*,
   650 F.3d 571 (5th Cir. 2011) ......................................................................23

*Reneker v. Offill*,
   No. CIV.A. 3:08-CV-1394-D, 2010 WL 1541350 (N.D. Tex. Apr. 19, 2010) .....................16

*U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*,
   355 F.3d 370 (5th Cir. 2004) ......................................................................15

*S.E.C. v. Res. Dev. Int'l, LLC*,
   487 F.3d 295 (5th Cir. 2007) ........................................................................7

*SB Int'l, Inc. v. Jindal*,
   No. CIV A 3:06-CV-1174-G, 2007 WL 1411042 (N.D. Tex. May 14, 2007) .....................22

*Scanlan v. Texas A&M Univ.*,
   343 F.3d 533 (5th Cir. 2003) ......................................................................12

*Sewell v. Monroe City Sch. Bd.*,
   974 F.3d 577 (5th Cir. 2020) ....................................................................5, 6

*Sligh v. City of Conroe, Texas*,
   87 F.4th 290 (5th Cir. 2023) ......................................................................16

*Somers v. Capybara Capital, LLC (In re Anadrill Directional Servs. Inc.)*,
   No. 23-31199, 2026 WL 305023 (Bankr. S.D. Tex. Feb. 4, 2026) ..........................................5

*Steward Health Care Sys. LLC v. Tenet Bus. Servs. Corp.*,
No. 2022-0289-SG, 2023 WL 5321484 (Del. Ch. Aug. 18, 2023)........................................21

*In re Steward Health Care System LLC*,
No. 24-90213 (Bankr. S.D. Tex. May 7, 2024), Dkt. No. 86 ..................................................25

*Steward Health Care System LLC v. Medical Properties Trust, Inc.*
Adv. Pro. No. 24-03168 (Bankr. S.D. Tex) ..........................................................................15

*Stewart v. Texas Tech Univ. Health Scis Ctr.*,
741 F. Supp. 3d 528 (N.D. Tex. 2024) ..................................................................................30

*Taylor v. Charter Med. Corp.*,
162 F.3d 827 (5th Cir. 1998) ...........................................................................................16, 22

*Tenet Healthcare Corp. v. Steward Health Care System LLC*,
No. 2022-0774-SG, 2024 WL 140512 (Del. Ch. Jan. 11, 2024) .............................................21

*Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*,
529 B.R. 147 (Bankr. W.D. Tex. 2015) ...................................................................................8

*Thomas v. Chevron U.S.A., Inc.*,
832 F.3d 586 (5th Cir. 2016) ................................................................................................29

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011), *as revised* (Dec. 16, 2011) .......................................................5

*Villarreal v. Wells Fargo Bank, N.A.*,
814 F.3d 763 (5th Cir. 2016) .............................................................................................2, 15

*Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*,
698 F.3d 231 (5th Cir. 2012) ................................................................................................18

*Williams v. Chase Manhattan Mortg. Corp.*,
No. CIV. 1:04CV199, 2005 WL 2544585 (W.D.N.C. Oct. 11, 2005) ...................................17

*Wilson v. Birnberg*,
667 F.3d 591 (5th Cir. 2012) ................................................................................................12

**Statutes**

11 U.S.C. § 502(d) ...............................................................................................................28

11 U.S.C. § 544(b) .............................................................................................................6, 24

Tex. Bus. & C. Code § 24.001 et seq..............................................................................*Passim*

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................................. *Passim*

Fed. R. Civ. P. 9(b) ........................................................................................................................ 5

Fed. R. Civ. P. 12(b)(6) ............................................................................................................. 2, 5

Fed. R. Civ. P. 20 ......................................................................................................................... 31

Fed. R. Civ. P. 21 ................................................................................................................... 30, 31

## INTRODUCTION

The First Amended Complaint (the "**FAC**") filed in this adversary proceeding plainly states a plausible claim for constructive fraudulent transfer under the Texas Uniform Fraudulent Transfer Act (Tex. Bus. & C. Code § 24.001 et seq. ("**TUFTA**")) against Tenet Healthcare Corporation, Inc. ("**Tenet**"). The FAC alleges that Steward Health Care System, LLC ("**SHC System**" or the "**Debtor**") transferred $1.1 billion to Tenet in exchange for the real property and operations of five hospitals in and around Miami, Florida (the "**Miami Hospitals**") in August 2021 (the "**Tenet Transaction**"). The FAC includes 31 paragraphs of factual allegations specific to the Tenet Transaction (*see* FAC ¶¶ 18-21, 249-277), as well as 8 paragraphs in the counts. *See* FAC ¶¶ 462–469. TUFTA requires a constructive fraud claimant to establish that the debtor was <u>financially impaired</u> at the time of the transfer, under any one of three tests (*see* TUFTA §§ 24.005(a)(2)(A), (B), 24.006(a)), and that the debtor did not receive <u>reasonably equivalent value</u> for the transfer. *See* TUFTA §§ 24.005(a)(2), 24.006(a). The FAC allegations allege ample facts demonstrating that these elements are met.

The FAC includes specific and detailed factual allegations supporting the claim that SHC System was <u>financially impaired</u> in August 2021. For example:

- The FAC alleges balance sheet insolvency: that SHC System's liabilities exceeded its assets by $1.65 billion at the end of May 2021 and by $1.54 billion at the end of August 2021. *See* FAC ¶ 273.

- The FAC further alleges that Steward's assets were unreasonably small in relation to its business in that it had hundreds of millions of dollars in negative net working capital in June and August 2021 and was suffering hundreds of millions of dollars of net operating losses. *See* FAC ¶¶ 274–275.

- The FAC further alleges that SHC System was unable to pay its debts as they came due, evidenced by its massive operating losses, its increasing accounts payable, and instances of its actual failure to pay its debts. *See* FAC ¶¶ 275–277.

The FAC also includes specific and detailed factual allegations supporting the claim that SCH System did not receive reasonably equivalent value in return for the $1.1 billion it paid. For example:

- The Miami Hospitals' historical earnings (their EBITDA and EBITDAR) were too low to justify the purchase price. *See* FAC ¶¶ 259–261.

- The Miami Hospitals value to any hospital buyer were based on what they could generate in earnings. SHC System's projected earnings for the Miami Hospitals, which SHC System relied on to justify the purchase price, were unrealistically high. *See id.*

- After the Transaction, the Hospitals earned tens of millions of dollars less than was required to justify the price paid. In fact, on an EBITDA basis, the Hospitals lost over a hundred million dollars after the sale. *See* FAC ¶¶ 265–266. These facts confirm that the projections and pricing at the time of the Transaction were too high and that the value of the Hospitals may even have been $0.

- Far from making money (let alone sufficient income to justify the purchase price), the Miami Hospitals were, in the words of SHC System's former CFO, a "[r]avenous drain on liquidity," between "$200 and $300 million." FAC ¶ 264. This comment is understandable in light of the excessive debt and rent obligations SHC System took on in the Tenet Transaction.

These allegations easily satisfy Rule 8's[2] notice pleading standard, which applies to this motion under Rule 12(b)(6).

Tenet's motion to dismiss (the "**MTD**") implicitly recognizes that the FAC states a plausible claim for relief by not really being a motion to dismiss. Rather, Tenet filed a premature, half-baked motion for summary judgment. Despite the well-known rule that a court considering a motion to dismiss "is limited to considering the contents of the pleadings and the attachments thereto," *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016), most of the MTD is based on many extra-complaint documents that were neither attached to the FAC nor referenced therein. Tenet asks the Court to adopt the assertions in ***thirteen extra-complaint documents*** and

---

[2] All references herein to a "Rule" are to a Federal Rule of Civil Procedure as adopted by the Federal Rules of Bankruptcy Procedure, as applicable to adversary proceedings.

reject the factual allegations in the FAC.[3]  For example, the MTD relies on the website of an organization called "Alpha Spread" to establish the value of the Miami Hospitals but does not bother to offer any legal justification for the Court's reliance on this website.[4] *See* MTD at 28. Of course, there is none. The Court should ignore every argument made by Tenet that relies on self-serving documents outside of the complaint, and that accounts for nearly every argument.

Tenet's premature summary judgment motion asks the Court to agree to three layers of incorrect assumptions and facts drawn from extra-complaint documents to conclude that the Miami Hospitals must have been worth at least $1.1 billion. The Court should reject each of these three layers.

(1)      Tenet argues that the Miami Hospitals' real estate must have been worth at least the $925 million that MPT paid SHC System to partially fund the acquisition. *See* MTD at 1-2, 5, 12, 14. But despite asking the Court to consider the Tenet Transaction as a whole, Tenet myopically ignores the glaring fact that MPT did not pay only for real estate—it also (and primarily) paid for SHC System's obligations on overpriced leases. Tenet and MPT entered an overpriced sale-leaseback, not a sale only. Nothing in the FAC indicates that the amount Tenet paid reflects the value of the real estate apart from the value of the leases. *See infra* at 9-10.

(2)      Tenet cites pre-bankruptcy Delaware Chancery Court decisions that supposedly confirmed an arbitrator's finding that SHC System received over $100 million in net working capital in the Tenet Transaction. *See* MTD at 1, 12. But the court decisions say nothing about net working capital, and Tenet has not submitted any arbitrator's decision. Moreover, Tenet cannot

---

[3] Even on such a hypothetical summary judgment, Tenet would **not** be entitled to seek inferences in its favor as the movant. And in the actual procedural context here—a motion to dismiss—the Trustee is also entitled to any reasonable inferences in its favor.

[4] Alpha Spread's website does not disclose who creates its content: the site describes itself as the work of a "team of finance nerds." https://www.alphaspread.com/about-us

show that the Trustee (who was not a party to the arbitration) is bound by any finding in these pre-bankruptcy proceedings between Tenet and SHC System. Finally, even if SHC System did receive $100 million in net working capital, that says nothing about the value of the Miami Hospitals' business, which depends on its earnings, and as alleged in the FAC, whatever the net working capital, the Hospitals' business actually lost money and was a drain on SHC System. *See infra* at 20-22.

(3)     Tenet asks the Court to rely on tax forms ***that Tenet filed*** with the IRS to establish as a matter of fact the value of the Miami Hospitals' operations. *See* MTD at 2, 3, 5, 6, 12, 13, 16, 17, 23. There is, of course, no legal basis for the Court to make a factual determination about value at the motion to dismiss stage based on Tenet's tax forms. Moreover, even if the tax forms showed what Tenet (or even SHC System) thought or said the Miami Hospitals and their operations were worth at the time, a constructive fraudulent transfer action turns on the ***actual*** values paid and received by the debtor, not on what the debtor and its counterparty ***said*** were the values paid and received. If what the debtor and its counterparty thought or said properties were worth at the time was conclusive as to value, constructive fraudulent transfer claims would be nearly worthless. *See infra* at 18-20.

None of the layers of Tenet's value-stacking argument have merit, and the Court should reject them all.

Finally, Tenet laces the MTD with pleas for the Court's sympathy. Tenet complains that it has been through pre-bankruptcy litigations and arbitrations with SHC System, that it supposedly sought to be helpful in SHC System's bankruptcy proceedings, and that it is a large SHC System creditor. Surely, the MTD implores, the Court should dismiss the FAC and let poor Tenet go. But none of these pleas has anything to do with the issue before the Court: whether the FAC states a

plausible claim for relief against Tenet. Moreover, the Trustee had nothing to do with any of those prior proceedings, and they are not relevant to the Trustee's adversary proceeding. Of course, given the FAC's allegations that Tenet pocketed $1.1 billion in exchange for hospitals that were worth far less at the time—and, in fact, fetched essentially nothing when sold in the bankruptcy proceeding—Tenet deserves no sympathy.

For these reasons, and as further discussed herein, the Court should deny the MTD. Should the Court determine to dismiss any of the claims against Tenet, the Trustee requests leave to amend, as discussed further herein.

## **ARGUMENT**

## I.   **THE FAC NEED ONLY ALLEGE A PLAUSIBLE CLAIM FOR RELIEF.**

Motions to dismiss under Rule 12(b)(6) are "viewed with disfavor and [are] rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011), *as revised* (Dec. 16, 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)). Because constructive fraudulent transfer claims do not require proof of intent, courts review motions to dismiss such claims subject to Rule 8(a)'s notice pleading standard, not the more demanding standard of pleading with particularity under Rule 9(b). *See Somers v. Capybara Capital, LLC (In re Anadrill Directional Servs. Inc.)*, No. 23-31199, 2026 WL 305023, at *5 (Bankr. S.D. Tex. Feb. 4, 2026).

Contrary to the MTD's request that the Court resolve key disputed facts such as valuation, a motion to dismiss is "not meant to resolve disputed facts or test the merits of a lawsuit." *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020). Rather, in deciding a motion to dismiss, courts "must accept the well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Pac. Summit Energy LLC v. WP&G Holdings, LLC*, No. 4:24-CV-00648, 2025 WL

963589, at *3 (S.D. Tex. Mar. 31, 2025) (citing *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019)). As such, the defendant must show that "in the plaintiff's best-case scenario," the complaint fails to state even "a plausible case for relief." *Sewell,* 974 F.3d at 581.

A plaintiff's pleading need not establish that the plaintiff *probably* will be able to establish the elements of his claim, just that there is "more than a sheer possibility" that he can do so. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The FAC easily satisfies this standard. Unlike the complaints that have been dismissed because their allegations were "unadorned," "naked assertion[s]" that offer "labels and conclusions" or "formulaic recitation[s] of the elements of. . . cause[s] of action," the FAC sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft*, 556 U.S. at 677–78 (quoting *Twombly*, 550 U.S. at 555–57).

## II.   THE FAC PLAUSIBLY ALLEGES A CLAIM FOR CONSTRUCTIVE FRAUDULENT TRANSFER UNDER THE TEXAS UNIFORM FRAUDULENT TRANSFER ACT.

The Trustee has brought claims for constructive fraudulent transfer under Sections 24.005(a)(2) and 24.006 of TUFTA. *See* FAC ¶ 468. The Trustee asserts these claims pursuant to his "strong-arm powers" under 11 U.S.C. § 544(b), and the MTD does not challenge the Trustee's authority to assert these claims.

To state a claim for constructive fraud under Texas law, the Trustee must plausibly allege that SHC System did not "receiv[e] . . . reasonably equivalent value in exchange for the transfer." TUFTA § 24.005(a)(2), § 24.006. The Trustee must also allege that SHC System was financially impaired at the time of the transfer. The financial impairment requires allegations of one of three statutory conditions. Specifically, SHC System was financially impaired if it:

> was insolvent at that time or . . . became insolvent as a result of the transfer or obligation (TUFTA § 24.006);

was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction (TUFTA § 24.005(a)(2)(A)); or

intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due (TUFTA § 24.005(a)(2)(B)).

The FAC plausibly alleges each of these elements.

> ### A.     The FAC Plausibly Alleges That SHC System Did Not Receive Reasonably Equivalent Value in Return from Tenet.

The animating purpose of TUFTA—and all fraudulent transfer statutes—is to protect creditors by preventing debtors from placing assets beyond creditors' reach. *Challenger Gaming Sols., Inc. v. Earp*, 402 S.W.3d 290, 293 (Tex. App. 2013). Reasonably equivalent value must "be determined in light of the purpose of the Act to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." *Bowman v. El Paso CGP Co., L.L.C.*, 431 S.W.3d 781, 788 (Tex. App. 2014) (quoting § 3 Value, Unif. Fraudulent Transfer Act, cmt. 2); *see also Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 667 (N.D. Tex. 2011) ("Whether a debtor received reasonably equivalent value is to be determined in light of [Alabama's version of the UFTA]'s purpose—to protect creditors."). Thus, "[c]onsideration having no utility from a creditor's viewpoint does not satisfy the statutory definition [of value]." *S.E.C. v. Res. Dev. Int'l, LLC*, 487 F.3d 295, 301 (5th Cir. 2007) (quoting UFTA § 3 cmt. 2). *See also In re Hinsley*, 201 F.3d 638, 644 (5th Cir. 2000) ("The value of consideration given for a transfer alleged to be in fraud of creditors is determined from the standpoint of creditors.").

At the motion to dismiss stage, allegations regarding reasonably equivalent value are subject to Rule 8(a)'s notice pleading standard. *Garcia Grain Trading Corp. v. Plascencia, Sr. (In re Garcia Grain Trading Corp.)*, Adv. No. 23-7002, 2024 WL 3170630, at *7 (Bankr. S.D. Tex. June 24, 2024). The inquiry into whether value provided is "reasonably equivalent" is "inherently

fact-laden, turning on the case-specific circumstances surrounding the debtor's decision to enter the challenged transaction." *Think3 Litig. Trust v. Zuccarello (In re Think3, Inc.)*, 529 B.R. 147, 200 (Bankr. W.D. Tex. 2015) (quoting *Lowe v. B.R.B. Enters., Ltd.* (*In re Calvillo*), 263 B.R. 214, 220 (W.D. Tex. 2000)). *See also Osherow v. Charles (In re Wolf)*, Adv. No. 16-030020-HCM, 2016 WL 4940198, at \*29–30 (Bankr. W.D. Tex. Sept. 15, 2016), *subsequently aff'd*, 697 F. App'x 317 (5th Cir. 2017) (concluding debtor received less than reasonably equivalent value even though "scant evidence" had been provided to the court of the value of the debtor's properties).

The FAC includes extensive allegations showing that the value of the Miami Hospitals' real estate and operations was far less than the $1.1 billion SHC System paid. SHC System priced the Miami Hospitals, as would any hospital buyer, based on its projections of the EBITDA and EBITDAR it would enjoy from operating the Miami Hospitals. *See* FAC ¶¶ 259–261, 265. However, the internally projected EBITDAR and EBITDA were not justified by the historical operations of the Miami Hospitals under Tenet. Whereas SHC System projected post-acquisition $156 million in EBITDAR in 2021 the Miami Hospitals had only earned between $60.3 and $105 million in the years 2018–2020. FAC ¶¶ 260–261. The historical EBITDAR could not justify the $1.1 billion price tag, and the projected EBITDAR was drastically overstated. Thus, SHC System drastically overpaid.

The Miami Hospitals' performance after SHC System acquired them confirmed that SHC System drastically overpaid. Predictably, the Hospitals missed their inflated EBITDAR targets by tens of millions of dollars and ***even lost over a hundred million dollars*** on an EBITDA basis, between 2021 and 2023. FAC ¶¶ 265–266. On an EBITDA basis, the Hospitals' were worth nothing. According to Mark Rich (Steward's then-former CFO and consultant), the Miami Hospitals were a "[r]avenous drain on liquidity" between "$200 and $300 million." FAC ¶ 264.

Then, during the 2024 bankruptcy, SHC System essentially gave away the Miami Hospitals' operations. FAC ¶¶ 268–269.

The question for Rule 8(a) purposes is, does the FAC plausibly allege that SHC System received less than reasonably equivalent value for the Miami Hospitals? Clearly, it does.

Tenet repeatedly urges the Court to consider the Tenet Transaction as an "integrated whole," arguing that the fact that MPT paid SHC System $900 million for the Miami Hospitals' real estate (MPT paid $900 million for the assets and $25 million for acquisition expenses (*see* FAC ¶ 254)) means conclusively that the real estate was worth at least $900 (or $925) million. *See* MTD at 14–17. However, Tenet's conception of the "integrated whole" omits one huge piece of the puzzle: SHC System's undertaking of overpriced lease obligations to MPT through sale-leaseback transactions designed to achieve MPT's core goal—securing long-term lease streams. *See* FAC ¶¶ 7, 18, 254, 264. The three parties—SHC System, MPT, and Tenet—always contemplated that Tenet would fund SHC System's purchase of the real estate, SHC System would sell the property to MPT, and MPT would lease it back. *See* FAC ¶¶ 253–256. *See also* MTD Ex. 1 at 82 (Tenet consenting to MPT's acquisition of the Miami properties). Thus, SHC System did not deliver to MPT only real estate in exchange for $900 million. SHC System also delivered to MPT its ongoing obligation to overpriced lease payments in the future, and the FAC does not establish that SHC System received $900 (or $925) million for only the physical assets sold to MPT. From the perspective of the "integrated whole," at the end of the Tenet Transaction, SHC System was left with excessive lease obligations, no cash (the cash MPT paid SHC System went to Tenet, of course), and hospital operations that were incapable of generating the returns on which SHC System based its pricing. From the standpoint of SHC System's creditors (the relevant perspective to assess reasonably equivalent value), and according to the FAC allegations, the

9

debtor's estate was worth less after the Tenet Transaction than before. Thus, the set of transactions alleged in the Amended Complaint plainly plead a lack of reasonably equivalent value, and Tenet's omissive description does not establish the contrary.

**B.   The FAC Plausibly Alleges That SHC System Was Financially Impaired at the Time of the Transfer.**

**1.   The Trustee's Financial Impairment Allegations Are Sufficient and Easily Satisfy Rule 8(a).**

The FAC includes extensive allegations regarding the SHC System's financial condition at the time of the Tenet Transaction. *See* FAC ¶¶ 273–77, 464. The FAC also contains detailed allegations about SHC System's financial condition before and after the Tenet Transaction, which support the allegations that detail the Debtor's financial condition at the time of the Transaction. *See* FAC ¶¶ 133–145; 243–248; 298–300.

The pleaded facts suffice to allege balance sheet insolvency: SHC System's liabilities exceeded its assets by $1.65 billion at the end of May 2021 and by $1.54 billion at the end of August 2021 (the Tenet Transaction closed in August 2021). *See* FAC ¶ 273. The FAC further alleges that SHC System's assets were unreasonably small in relation to its business because it had hundreds of millions of dollars in negative net working capital in June and August 2021 and was suffering hundreds of millions of dollars of net operating losses. *See* FAC ¶¶ 274–275. The FAC also alleges that SHC System was unable to pay its debts as they came due, as evidenced by its massive operating losses, its increasing accounts payable, and the allegations setting forth specific instances of SHC System's failure to pay specific debts to a dozen particular creditors as those debts became due. *See* FAC ¶¶ 275–277.

Courts have rejected challenges to the sufficiency of allegations about insolvency and financial impairment that were far less detailed and specific than those in the FAC. *See Guffy v.*

*Brown, (In re: Brown Med. Ctr., Inc.)*, 552 B.R. 165, 170 (S.D. Tex. 2016) (describing bare-bones allegations); *Jetpay Merch. Servs., LLC v. Miller*, No. CIV.A. 3:07CV0950-G, 2007 WL 2701636, at \*8 (N.D. Tex. Sept. 17, 2007) (same). The plausible allegations in the FAC plainly put Tenet on notice of the insolvency and financial impairment allegations against it, and the Court should reject any argument by Tenet to the contrary.

> **2.  The Court Should Reject Tenet's Misconstruction of the Statutory Pleading Burden About SHC System's Unreasonably Small Assets.**

Tenet argues that, to allege financial impairment under TUFTA § 24.005(a)(2)(A), the challenged transfer must be the specific transfer that left the debtor with unreasonably small assets, and if the debtor already had unreasonably small assets before the transfer, no claim under 24.005(a)(2)(A) lies. *See* MTD at 32–33. However, Tenet misconstrues the plain language of the statute. The statute provides that a transfer is fraudulent if the debtor did not receive reasonably equivalent value in the exchange and the debtor

> was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

TUFTA 24.005(a)(2)(A). The statute is satisfied if the debtor "was engaged" in a business for which its remaining assets were unreasonably small. It does not say that the transaction at issue must be the one that renders the remaining assets unreasonably small. Tenet's misinterpretation also contradicts the statute's purpose—to protect creditors from harmful dissipation of assets during financial distress. Tenet would ask the Court to protect creditors only from the single transaction that broke the camel's back. But transfers that made a debtor's already inadequate capital position even worse deprive creditors just the same.

Texas courts have affirmed TUFTA claims under § 24.005(a)(2)(A) when the evidence at trial specifically established that the debtor's assets were unreasonably small "at all times," not

just because of the transfer at issue. *See Magaraci v. Espinosa*, No. 03-14-00515-CV, 2016 WL 858989, at *6, *9 (Tex. App. Mar. 4, 2016). The cases Tenet cites are not controlling, and courts have rejected the position that the transfer at issue must be the one that rendered the debtor's assets unreasonably small. *See In re: Blixseth*, 514 B.R. 871, 883 (D. Mont. 2014) (under plain language reading of the statute, expressly rejecting view that the "Adequate Capital Test" under 11 U.S.C. § 548(a)(1)(B)(ii)(II) requires the plaintiff to establish causation), *aff'd in part, rev'd in part on other grounds,* 679 Fed. Appx. 611 (9th Cir. 2017); *Kartzman v. Latoc, Inc. (In re: the Mall at the Galaxy, Inc.)*, Adv. Pro. No. 12-1769 VFP, 2019 WL 1522703, at *24 (Bankr. D.N.J. April 4, 2019) (same; citing *Blixseth*), *aff'd in part, rev'd in part on other grounds and remanded sub nom., In re Mall at the Galaxy,* No. 2:19-CV-10340, 2020 WL 1847667 (D.N.J. Apr. 9, 2020).

Moreover, although the FAC pleads that Steward had unreasonably small assets before the Tenet Transaction, the facts presented at trial may demonstrate that it was the $1.1 billion transfer to Tenet that pushed Steward into having unreasonably small assets. Certainly, taking on $200 million in additional debt, all of which proceeds were transferred to Tenet, and taking on overpriced leases on hospitals could have done this. Tenet may only prevail on its MTD "if it appears beyond doubt that the [Trustee] can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan v. Texas A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). Clearly, the Trustee can prove a set of facts demonstrating that the transfer to Tenet caused Steward to have unreasonably small assets.

Lastly, Tenet's argument attacks only one of the three grounds the Trustee has pleaded for establishing financial impairment under TUFTA. Even if Tenet's argument were correct (and it is not), this argument does not justify dismissing the Trustee's claim against Tenet. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012) (noting that "[d]ismissal is improper 'if the allegations

support relief on any possible theory'" and that the court's "inquiry focuses on the entirety of the complaint, regardless of how much of it is discussed in the motion to dismiss") (quoting *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994)).

### 3. The Court Should Reject Tenet's Arguments Regarding SHC System's Inability to Pay Debts as They Came Due.

Tenet again tries to graft a new causal element on a test for financial impairment under TUFTA § 24.005(a)(2)(B), which looks at whether a debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. As noted above, the FAC alleges that SHC System was avoiding or unable to pay a dozen different creditor's claims around the time of the Tenet Transaction. Tenet claims that the only relevant instances of failures to pay are those ***caused by the Tenet Transaction***. MTD at 34. But TUFTA § 24.005(a)(2)(B) says nothing about the relationship between the challenged transaction and the inability to pay debts. Once again, Tenet's attempt to bootstrap a phantom requirement is inconsistent with the purpose of a statute that is designed to protect all creditors, whether they were unpaid because of the transaction at issue or because of other reasons. Tenet cannot support its proposed additional requirement. Even the cases Tenet cites (MTD at 33–34) do not say that the inability to pay debts must have been caused by the transaction at issue.

In any event, the FAC satisfies Tenet's invented requirement. The FAC specifically alleges that SHC System intended to incur and believed it would incur debts beyond its ability to pay at the time of the Tenet Transaction, which allegation must be taken as true. *See* FAC ¶ 464. The FAC alleges that SHC System suffered massive operating losses and was unable to pay its debts as they came due before and after the Tenet Transaction (FAC ¶¶ 275–277), as evidenced by the multitude of lawsuits SHC System faced from unpaid vendors, a situation which SHC System's managers were obviously aware of. Given that the Tenet Transaction required SHC System to pay $208.9

13

million in borrowed funds and take on tens of millions of dollars in exorbitant lease obligations (*see* FAC ¶¶ 18, 254, 264), and given that SHC System was already losing money and unable to pay its debts, SHC System knew or should have known that the Tenet Transaction would cause SHC System to take on additional debts it could not pay.

Lastly, Tenet cannot establish on a motion to dismiss that the Tenet Transaction "improved Steward's financial footing." MTD at 34. To the contrary, the FAC alleges that, according to Mark Rich (Steward's then-former CFO and consultant), the Miami Hospitals were a "[r]avenous drain on liquidity" between "$200 and $300 million." FAC ¶ 264. The Miami Hospitals had negative EBITDA of $103.1 million in the years after the acquisition and before SHC System filed for bankruptcy. FAC ¶ 266. The FAC notes that SHC System's internal financial statements showed a decrease in the company's net deficit between April and August 2021, but the FAC does not say that the decrease was caused by the Tenet Transaction. And by the end of 2021, liabilities exceeded assets by nearly $1.89 billion. FAC ¶ 273. When SHC System sold the Miami Hospital operations during the bankruptcy, it got virtually nothing for them. FAC ¶ 269. Far from alleging that the Tenet Transaction improved Steward's financial footing, the FAC alleges that the Miami Hospitals were a millstone around SHC System's neck.

## III. TENET CANNOT AND HAS NOT ESTABLISHED THE IMPLAUSIBILITY OF THE FAC'S ALLEGATIONS BY ITS EXTRA-COMPLAINT DOCUMENTS.

The preceding section addresses the MTD's plausibility arguments ***not*** based on extraneous documents. Those arguments are wrong, but they are fairly considered on a motion to dismiss. But most of the MTD's plausibility arguments are based on documents the Court may not consider on a motion to dismiss, at least not to establish disputed factual propositions, as Tenet urges. The MTD largely rests on at least ***thirteen*** outside-the-complaint documents:

14

- A collection of tax forms that Tenet apparently filed with the IRS ("**Tenet's Tax Forms**") (MTD Ex. 2);

- Three pre-bankruptcy decisions by the Delaware Chancery Court (the "**Delaware Decisions**") (MTD at 1, n.3 (and accompanying text); 2; 7, n.13–14 (and accompanying text); 12, n.16 (and accompanying text); 15; 22, n.23;

- Several statements or submissions by SHC System (not the Trustee) both before and after filing for bankruptcy:   A hearing transcript from one of the matters that led to the Delaware Decisions  (the "**Delaware Hearing Transcript**") (MTD Ex. 3); an affidavit submitted pre-bankruptcy by SHC System's former CFO (the "**CFO Affidavit**") (MTD Ex. 4); a demonstrative exhibit used during a first-day hearing (the "**Hearing Demonstrative**") (MTD at 31); a snippet from a transcript of a hearing in this Court that occurred months before the Trustee was appointed (the "**Bankruptcy Hearing Transcript**") (MTD at 31); a declaration made by Steward's former Chief Restructuring Officer (the "**CRO Declaration**") (MTD at 31); A Debtor-in-Possession ("**DIP**") Term Sheet submitted in support of the Debtor's motion for DIP financing (the "**DIP Term Sheet**") (MTD at 3); and the complaint the Debtor filed in *Steward Health Care System LLC v. Medical Properties Trust, Inc.* Adv. Pro. No. 24-03168 (Bankr. S.D. Tex) (the "**MPT Complaint**").

- One of Tenet's SEC filings (the "**SEC Filing**") (MTD at 22); and

- A webpage posted by an organization called "Alpha Spread" (the "**Webpage**") (MTD at 28).

A.    **There Are Limited Instances When Extra-Complaint Documents Can Be Considered on a Motion to Dismiss, and Even Then for Only Limited Purposes.**

1.    **Documents Incorporated in the Complaint.**

Generally, a court at the motion to dismiss stage "is limited to considering the contents of the pleadings and the attachments thereto." *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016). If a complaint attaches an exhibit, and an allegation in the complaint is contradicted by that same exhibit, "then indeed the exhibit and not the allegation controls." *U.S. ex rel. Riley v.*

*St. Luke's Episcopal Hosp.*, 355 F.3d 370, 377 (5th Cir. 2004). Tenet does not argue based on any exhibit to the FAC.

The Fifth Circuit has recognized an exception to the bar against consideration of extra-complaint documents: a court may also review "[d]ocuments that [1] a defendant attaches to a motion to dismiss . . . if [2] they are referred to in the plaintiff's complaint and [3] are central to her claim." *Sligh v. City of Conroe, Texas*, 87 F.4th 290, 297 (5th Cir. 2023) (quoting *Villarreal*, 814 F.3d at 766). This essentially allows a defendant to cite documents that were not made exhibits to plaintiff's complaint, but they were effectively incorporated in the complaint because the plaintiff referred to the documents and the documents were central to the plaintiff's claim.

## 2.      The Scope of Facts Subject to Judicial Notice Is Limited.

Taking judicial notice is reserved for undisputed documents; it is not an exception meant to swallow the rule that the complaint is what matters on a motion to dismiss. A court may take judicial notice of facts that are either "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 255 (5th Cir. 2021) (quoting Fed. R. Evid. 201(b)(1)-(2)). In other words, judicial notice is limited to "indisputable facts," and it used only "sparingly." *Reneker v. Offill*, No. CIV.A. 3:08-CV-1394-D, 2010 WL 1541350, at *5–6 (N.D. Tex. Apr. 19, 2010). A fact is indisputable where it amounts to a "self-evident truth[ ] that no reasonable person could question, [a] truism[ ] that approach[es] platitude[ ] or banalit[y]." *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 830 (5th Cir. 1998) (alterations in original). The legal determinations of another court are not the sort of "adjudicative facts" that are beyond "reasonable dispute." *Id*. at 830–31 (quoting Fed. R. Evid. 201). And indisputable facts "do not include the 'facts' asserted in various affidavits and depositions." *Kaye*, 453 B.R. at 665. Indeed, findings of facts in "other

16

proceedings . . . are usually disputed and almost always disputable." *Johnston v. Dexel*, 373 F. Supp. 3d 764, 785 (S.D. Tex. 2019).

Regarding public records, judicial notice only establishes the document's existence and what it states, not the truth of any ***disputed*** facts asserted therein. *See Petrobras* 9 F.4th at 255 (taking judicial notice of an SEC filing "only for the purpose of determining what statements the documents contain, not to prove the truth of the documents' contents"). The same is true for "items appearing in the record of the case;" they are considered for the limited purpose of authentication, but not to "automatically accept as true the facts contained in such documents." *Manix Energy, Ltd. V. James (In re James)*, 300 B.R. 890, 895 (Bankr. W.D. Tex. 2003) (refusing to consider items in the underlying bankruptcy record on a motion for summary judgment). *See also Williams v. Chase Manhattan Mortg. Corp.*, No. CIV. 1:04CV199, 2005 WL 2544585, at *5 (W.D.N.C. Oct. 11, 2005) (noting that on a motion to dismiss, court may consider bankruptcy record to establish that judicial events happened on certain days but not to establish the truth or falsity of the records' contents). Moreover, the court need not accept for any purpose in an ***adversary proceeding*** documents filed in the underlying ***bankruptcy proceeding***. The adversary proceeding is not the same case as the main bankruptcy, at least for these purposes. *See James*, 300 B.R. at 895–96.

### 3.    Judicial Estoppel Applies Only Rarely.

Lastly, Tenet invokes judicial estoppel based on extra-complaint documents, but courts "exercise great caution" before applying judicial estoppel. *Blanco v. Bayview Loan Servicing LLC (In re Blanco)*, 633 B.R. 714, 736 (Bankr. S.D. Tex. 2021).[5] A defendant must establish judicial estoppel by demonstrating that "(1) the party against whom judicial estoppel is sought has asserted

---

[5] "The party invoking judicial estoppel has the burden of pleading and proving it as an affirmative defense." *Goodman v. Hewlett-Packard Co.*, No. 4:16-CV-3195, 2017 WL 2859805, at *4 (S.D. Tex. June 13, 2017), *report and recommendation adopted*, No. 4:16-CV-3195, 2017 WL 2844032 (S.D. Tex. June 30, 2017) (citing *United States v. McCaskey*, 9 F.3d 368, 378 (5th Cir. 1993)).

a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 272 (5th Cir. 2015).

Judicial estoppel is not a way for a defendant to smuggle into the record any prior statement the defendant contends was not on all fours with a particular allegation in a pleading. Rather, the plain inconsistency must amount to "intentional self-contradiction" as a way of "obtaining unfair advantage." *Wells Fargo Bank, N.A. v. Oparaji (In re Oparaji)*, 698 F.3d 231, 235 (5th Cir. 2012) (quoting *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008)). Importantly, "semantic inconsistency" is not the test for admitting a prior statement outside the pleading. Rather, the "legal[] possib[ility]" of a party to maintain its two positions is what matters. *GlobeRanger Corp. v. Software AG*, 27 F. Supp. 3d 723, 743 (N.D. Tex. 2014), *aff'd sub nom. GlobeRanger Corp. v. Software AG United States of Am., Inc*., 836 F.3d 477 (5th Cir. 2016). Judicial estoppel is also not a basis for admitting stray remarks that were inconsequential. Rather, the prior statement can only be considered if it "convinced the court to accept that previous position" and rely on it. *Gabarick v. Laurin Mar. (Am.) Inc.*, 753 F.3d 550, 553 (5th Cir. 2014) (quoting *Hall v. GE Plastic Pac. PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003)). Indeed, a defendant cannot invoke judicial estoppel by claiming just that the plaintiff tried to persuade a court through the prior assertion— the test requires "***actual*** acceptance by a court." *NGM Ins. Co. v. Bexar Cnty.*, *Texas*, 211 F. Supp. 3d 923, 933-34 (W.D. Tex. 2016).

*     *     *

None of these doctrines support Tenet's use of the fourteen extra-complaint documents as requested in the MTD. Even if the Court did consider them, as discussed below, dismissal would be inappropriate.

**B.      The Extra-Complaint Documents Do Not Support Dismissal.**

**1.      Tenet's Tax Forms Should Not Be Considered and Do Not Establish Value.**

The MTD relies extensively on—and cites repeatedly to—Tenet's Tax Forms. *See* MTD at 2, 3, 5, 6, 12, 13, 16, 17, 23. These documents were (apparently) filed with the IRS ***by Tenet***, not by SHC System and certainly not by the Trustee. This is clear from the individual forms, each of which lists the names of the tax filers, one of which is "Tenet Florida, Inc." (MTD Ex. 2 at 10), as well as the names of the "other part[ies] to the transaction[s]," all of which are "Steward" entities.[6]

The Court should not consider Tenet's Tax Forms. ***First***, Tenet's Tax Forms do not qualify as an exhibit incorporated in the FAC. The FAC neither references the Tax Forms nor relies on the Tax Forms, so the second and third elements for consideration of the Tax Forms as an exhibit fail. *See supra* at 14. ***Second,*** the doctrine of judicial notice does not provide a basis for the Court to consider the Tax Forms, as Tenet argues. *See* MTD at 6 n.11, 17 n.19. How Tenet reported the transaction is not incontrovertible proof of value from SHC Sytem's perspective, nor is it self-evident that what Tenet said was accurate. Even if (as Tenet claims) SHC System were contractually required to file tax forms with the same information as Tenet's, taking judicial notice of the Tax Forms might only establish what Tenet or SHC System told the IRS, but as explained above, judicial notice of the Tax Forms would not establish that what Tenet (or even SHC System) told the IRS was accurate, which is the purpose for which Tenet repeatedly cites them.

Thus, the Court should ignore the Tax Forms and all of Tenet's arguments dependent on them. But even if the Court somehow considered the Tax Forms, they do not support dismissal. Tenet argues that the allocation of $19 million to Other Intangible Assets and Goodwill in the Tax

---

[6] The APA says that the parties will file consistent Form 8594 tax forms (*see* MTD at 5–6), but the APA does not attach those forms. Thus, even if the APA itself satisfies the elements for consideration of an extra-complaint document, the Tax Forms do not.

Forms shows that "Steward affirmed to the IRS it received 98% of the value of the transaction in hard assets." MTD at 17. Perhaps this indicates that SHC System at one time believed that it had received $19 million, or 1.7% of the sales price, worth of Other Intangible Assets and Goodwill— at least for purposes of measuring taxable income. That does not make it true, however, and the Trustee will demonstrate at trial that the value of the assets Steward received from Tenet were worth far less than the $1.1 billion Steward paid—whatever SHC System may have said at the time as a tax allocation. *See* FAC at ¶¶ 265–271.

Finally, what Tenet or Steward said in the Tax Forms, and what that has to do with the value of the Miami Hospitals and their operations, is completely unclear. Tenet argues that because SHC System attributed $19 million to goodwill, "Steward affirmed to the IRS that it received 98% of the value of the transaction in hard assets." MTD at 6. *See also* MTD at 17. But the Tax Forms state $159 million in Accounts Receivable, another "soft" asset, and $18 million in Inventories, which might be a soft asset. Plus, what falls within Class V—Equipment, Leasehold Improvements, and Other—is completely unclear but might be another soft asset that would change Tenet's simplistic math. Thus, were this Court to consider the Tax Forms (it should not), the Court cannot draw the conclusions Tenet urges from these unclear documents on a motion to dismiss.

### 2. The Delaware Decisions Should Not Be Considered and Do Not Establish Value.

The MTD claims SHC System must have received reasonably equivalent value because an arbitrator supposedly determined that SHC System received over $100 million in net working capital in the Tenet Transaction, and courts affirmed that finding. *See* MTD at 1, n.3 (and accompanying text); 2; 7, n.13–14 (and accompanying text); 12, n.16 (and accompanying text); 15; 22, n.23. The Court should reject Tenet's position.

20

**First,** the court decisions have no weight because they do not explain what the arbitrator found. *See Steward Health Care Sys. LLC v. Tenet Bus. Servs. Corp.*, No. 2022-0289-SG, 2023 WL 5321484 (Del. Ch. Aug. 18, 2023) (affirming undescribed arbitral award before appeal); *Tenet Healthcare Corp. v. Steward Health Care System LLC*, No. 2022-0774-SG, 2024 WL 140512 (Del. Ch. Jan. 11, 2024) (entry of judgment after appeal). These court decisions do not even say the words "net working capital." The Court cannot, from these decisions or any other evidence before the Court, say what amount of net working capital SHC System received in the Tenet Transaction.

**Second,** the Court should reject Tenet's suggestion in a footnote that any findings by the Delaware Court bind the Trustee under the doctrine of issue preclusion. *See* MTD at 15 n.18. For one thing, as noted above, the Delaware Decisions do not describe the "issue" that Tenet wants precluded. In addition, before a party may be precluded from relitigating an issue determined in a prior action, the party (or its privy) against whom the preclusion is to be applied must have been a party to the prior action. *See, e.g., Daniels v. Equitable Life Assur. Soc. of U.S.,* 35 F.3d 210, 214 (5th Cir. 1994) (applying Texas law); *Meador v. Oryx Energy Co.*, 87 F. Supp. 2d 658, 664 (E.D. Tex. 2000) (applying federal law). The Trustee was not a party to the Delaware dispute between Tenet and SHC System, and Tenet has not even attempted to establish that the Trustee of the Litigation Trust created out of multiple debtors' bankruptcy estates is in privity with SHC System. *See, e.g., In re Porras*, 312 B.R. 81, 115-116 (Bankr. W.D. Tex. 2004) (refusing to apply res judicata or claim preclusion to a claim brought by a bankruptcy trustee based on prior action involving debtor; reasoning that for parties to be in privity, they must share an identity of relevant legal interests and while "a bankruptcy trustee is a successor of the bankrupt debtor for many purposes, he is much more than that, as a representative of the debtor's creditors and considering

the extraordinary rights he is given under the Bankruptcy Code"). Thus, there is no basis for applying issue preclusion to resolve the MTD.

**Third**, because issue preclusion does not apply, Tenet can rely on the Delaware decisions for no more than to establish that they exist, not to establish the truth of the matters supposedly set forth in the Delaware decisions. *See supra* at 16–17. *See also SB Int'l, Inc. v. Jindal*, No. CIV A 3:06-CV-1174-G, 2007 WL 1411042, at *1–2 (N.D. Tex. May 14, 2007) (judicial notice of filings in other courts only appropriate for "the fact that these documents exist and were filed in the courts shown on the first page of each document"); *see also Taylor*, 162 F. 3d at 830 n.18 (having "difficulty conceiving" of a situation where the court could take notice of the ***factual findings*** of another court). But the existence alone of the Delaware Decisions, apart from the supposed findings therein, is irrelevant to the MTD.

**Fourth**, even were the Court to determine for purposes of the MTD that SHC System received over $100 million in net working capital, that does not establish reasonably equivalent value. The value of the Miami Hospitals to SHC System was their ability to generate earnings. That is what SHC System based its pricing on (*see supra* at 8), and that is what any buyer of operating hospitals would base their pricing on. Whether or not the Tenet Transaction delivered some amount of net working capital to SHC System, it delivered hospitals that provided far less EBITDA and EBITDAR than justified their $1.1 billion price tag.

### 3. SHC System's Prior Statements About Its Financial Condition Do Not Estop the Trustee.

Tenet argues that the Court should judicially estop the Trustee from claiming that SHC System was financially impaired in August 2021 because SHC System (not the Trustee) made representations regarding its financial condition in (a) the October 2023 CFO Affidavit and

22

Delaware Hearing Transcript and (b) the May 2024 CRO Declaration, Bankruptcy Hearing Transcript, and Bankruptcy Hearing Demonstrative. *See* MTD at 30–32.[7]

The MTD does not come close to establishing that judicial estoppel applies to any statement in those documents.

### a. The Pre-Bankruptcy Statements in the CFO Affidavit and the Delaware Hearing Transcript.

*First*, these post-petition statements cannot be attributed to the Trustee for purposes of judicial estoppel because they were not ***made*** by the Trustee. Upon the bankruptcy petition date, all causes of action became property of the estate, and they did so "free and clear of [judicial estoppel] that arose exclusively from [the debtor]'s post-petition actions." *Reed v. City of Arlington*, 650 F.3d 571, 575 (5th Cir. 2011). That is, the estate receives (and the Trustee is now vested with the authority to pursue) causes of action subject only to pre-petition defenses. *Id*. Thus, while "judicial estoppel might apply to Debtor," the Trustee is not judicially estopped because there is no "'contrary position' that the Trustee may have taken." *In re Miller*, 347 B.R. 48, 54 (Bankr. S.D. Tex. 2006).

---

[7] Tenet also references SHC System's representation in the APA as to its solvency. *See* MTD at 5; MTD Ex. 1, § 4.3. Tenet does not argue that this representation by SHC System is binding on the Trustee, even though the statement is made in a document referenced in the FAC. Any such argument would fail because, whereas the Court might look to the APA to test whether the FAC properly characterizes its contents, any representations SHC System made in the APA are not binding on the Trustee to establish facts in this proceeding. *See, e.g., Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) ("When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper. … But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true.") (citing multiple cases).

Worse, Tenet cites its representations in the APA regarding its supposed pre-acquisition EBITDA to contradict FAC allegations. *See* MTD at 22. The FAC says nothing about what Tenet represented to SHC System, in the APA or anywhere else, and what Tenet represented in the APA is not binding on the Trustee and does not contradict any statement in the FAC. Also, Tenet references the FAC's representations about EBITDA**R**, but Tenet's representations in the APA regard EBITDA.

**Second,** the contents of these statements do not reflect inconsistent legal positions to those asserted in the FAC. Steward's CFO's statement in 2023 that "bankruptcy wasn't [being] considered" in 2023 is not inconsistent with the allegations that SHC System was insolvent in August 2021. *See* MTD at 30. As described in the Amended Complaint, Steward had been insolvent since at least 2016, but it took increasingly desperate and ill-advised measures to stave off officially filing for bankruptcy. *See, e.g.*, FAC ¶¶ 158 (Steward stalling or "stretching" bill payments to vendors); 178 (Steward leadership describing Cerberus as "assholes" for mentioning the possibility of bankruptcy); 243 (documenting consistently negative net equity since 2016); 313 (Steward appropriating $10 million from a captive insurer to cover shortfalls). Thus, the CFO's Statement does not make the FAC legally impossible, nor is the prior statement inconsistent with the FAC.

For at least these reasons, the CFO Affidavit and the Delaware Hearing Transcript provide no basis for applying judicial estoppel here.

> **b.   The Debtor's Prior Statements at the Commencement of the Bankruptcy Proceedings Cannot Be Considered and Provide No Basis for Estoppel.**

Tenet's argument that the CRO Declaration, the Bankruptcy Hearing Transcript, and the Bankruptcy Hearing Demonstrative (collectively, the "**First Day Materials**") provide a basis for estoppel similarly fails.

**First,** the MTD cannot establish the first element of judicial estoppel because the Trustee did not make any of the statements in those materials. Moreover, while the Trustee may be asserting the Debtor's rights in some contexts, as to the claim against Tenet, the Trustee's right to bring TUFTA claims against Tenet arises out of the creditors' legal rights, not the Debtor's. *See* 11 U.S.C. § 544(b) (allowing Trustee to assert creditor claims). The Trustee and the Debtor do not

enjoy an identity of interest that could support application of judicial estoppel to preclude the Trustee's creditor-based fraudulent transfer claim based on something the Debtor's representatives said.

**Second,** the MTD does not identify any plain inconsistency between the Debtor's position then and the Trustee's position here. The Debtors' prior statements that Steward had a dire financial condition in 2023 are not inconsistent with the allegations that SHC System was insolvent in August 2021 and the Debtor's statements to the Court in the First Day Materials.

**Third,** Tenet has not identified any instance in which this Court **accepted** and **relied upon** representations in the First Day Materials about when Steward first became insolvent. That was not an issue in any disputed first-day motion. *See, e.g.*, *In re Steward Health Care System LLC*, No. 24-90213 (Bankr. S.D. Tex. May 7, 2024), Dkt. No. 86 (reviewing first day materials to conclude that granting the requested interim relief was 1) "necessary to avoid immediate and irreparable harm," and 2) "in the best interests of the Debtors" and stakeholders). Tenet has pointed to no statement of the Court suggesting that whether SHC System was insolvent in August 2021 was before the Court or in the Court's contemplation at all.

### 4. The DIP Term Sheet, the Bankruptcy Hearing Transcript, and the MPT Complaint Do Not Establish the Value of the Miami Hospitals.

Tenet references the DIP Term Sheet submitted for debtor-in-possession financing at the beginning of the bankruptcy, asking the Court to determine that the "Lease Base" described therein establishes the value of the Miami Hospitals. *See* MTD at 3. But this term sheet, which was filed by SHC System, not the Trustee, is not properly before the Court. The FAC does not mention the DIP Term Sheet at all, let alone attach it or rely on it, so it is not an effective exhibit to the FAC. Taking judicial notice of what the Debtor set forth in the DIP Term Sheet serves no purpose because judicial notice does not allow the Court to look to this filing to establish the truth of the statements

25

therein. As to judicial estoppel, the Trustee was not a party to DIP financing and did not file the DIP Term Sheet, and there is no record that the Court relied on the alleged "Lease Base" set forth therein for particular hospitals when it ruled on the motion for DIP financing.

Tenet also references the Bankruptcy Hearing Transcript to support the proposition that the Miami Hospitals were valuable. *See* MTD at 7–8. Tenet also cites the MPT Complaint for the proposition that the Miami Hospitals' value was not fully recognized during the bankruptcy process because of MPT's interference. *See* MTD at 26–27. For the same reasons the DIP Term Sheet is not binding on the Trustee, the Debtor's statements at a hearing and in an unadjudicated adversary proceeding complaint are also not binding.

In any event, there is no reason to believe that the "Lease Base" is somehow a substitute for an appraisal or expert's valuation. Indeed, there is reason to question whether the "Lease Base" amounts are related to value at all. For example, the Term Sheet states the "Lease Base" of Norwood Hospital is $472 million, but Norwood had been ***closed since June 2020*** because of physical damage to the property. As to the Bankruptcy Hearing Transcript, the Debtor's statements regarding the value of the *eight Florida* hospitals do not necessarily speak to the value of the *five Miami Hospitals*. And whatever the Debtor may have thought the Miami Hospitals were worth when it filed for bankruptcy, the sales process demonstrated they were worth very little.[8]

### 5.   Tenet's Own SEC Filing Provides No Basis to Contradict the FAC's Allegations or Establish Facts.

The MTD asks the Court to take judicial notice of the 8K Tenet filed on June 16, 2021, for the purpose of establishing the amount of EBITDA the Miami Hospitals generated at or near the time of the Tenet Transaction. *See* MTD at 22. Tenet cannot seriously believe the Court can look

---

[8] Tenet also cites statements by Debtor's counsel at a final fee application hearing. *See* MTD at 27. Again, the Trustee is not bound by whatever Debtor's counsel may have said at this hearing. Moreover, Debtor's counsel made no statements regarding the value of the Miami Hospitals in particular.

to Tenet's own SEC filing as conclusive evidence on this motion to dismiss. Tenet's own spin on a core disputed fact—the objective value of the Miami Hospitals—is nothing remotely like an assertion that can be accepted as true here. *See supra* at 16–17.

Moreover, even if the Court were to consider Tenet's 8-K for the substance therein, that combined with the allegations in the FAC regarding the Miami Hospitals' actual performance after the Tenet Transaction suggest that Tenet misrepresented to SHC System and the public generally the Miami Hospitals' profitability. *See* FAC ¶ 266 (alleging that the Miami Hospitals had negative EBITDA in the years after SHC System acquired them).[9]

### 6.    The Court Cannot Take Judicial Notice of Alpha Spread's Webpage.

Tenet cannot smuggle into the record what an anonymous finance site reported on the internet regarding the valuation multiple for Tenet's stock. *See* MTD at 28. Tenet did not even attempt to identify which legal theory would allow the Court to consider Alpha Spread's Webpage, but it cannot be an effective exhibit to the FAC because Tenet does not attach the document as an exhibit, because the FAC does not reference the Webpage, and because the FAC does not rely on the Webpage. *See supra* at 14. Judicial estoppel obviously does not apply. Judicial notice is inappropriate because the document is referenced to prove a disputed fact (whether SHC System received reasonably equivalent value from Tenet). *See supra* at 16–17. That Alpha Spread made a claim is itself, apart from the truth of the claim, irrelevant.

Tenet's citation to the Webpage is entirely unserious, and the Court should ignore it.

*       *       *

---

[9] Tenet cherry-picks from its own extra-complaint statements. Were it appropriate to consider outside-the-complaint documents to establish facts on a motion to dismiss (it is not), the Court might consider Tenet's second quarter 10-Q for 2021, which (at 10–11) states that the value of the Miami Hospitals as of June 30, 2021, was $683 million--***$417 million less*** than SHC System paid for the Miami Hospitals just 5 weeks later.
https://www.sec.gov/ix?doc=/Archives/edgar/data/0000070318/000007031821000030/thc-20210630.htm

For these reasons, the Court should ignore the extra-complaint documents and all of Tenet's arguments that depend on them, which is most of the MTD. Similarly, Tenet spends a page speculating as to the roles and advice given by various professionals involved in the Tenet Transaction. *See* MTD at 29. None of that is in the FAC, of course. Tenet does not even have any extra-complaint documents to support its arguments about the professionals: rather, it just offers its own speculation. The Court should ignore page 29 of the MTD.

## IV.     THE DISALLOWANCE CLAIM IS TIMELY.

The Trustee's disallowance claim cannot be dismissed because it was made too early. 11 U.S.C. § 502(d) does not require the Trustee to only seek disallowance of Tenet's claim only after prevailing on his TUFTA claim against Tenet. The Fifth Circuit has recognized that 502(d) claims and constructive fraudulent transfer claims may co-exist in the same complaint and need not be brought successively. *See Matter of Life Partners Holdings, Inc.*, 926 F.3d 103, 122 (5th Cir. 2019) (holding that the district court erred in dismissing disallowance claims related to fraudulent transfer claims). Disallowance rises or falls with the avoidance counts; it does not await a separate judgment before it may be asserted.

The cases Tenet cites do not counsel otherwise. In *In re IFS Financial Corp.*, No. 02-39553, 2008 WL 4533713, at *3–4 (Bankr. S.D. Tex. Oct. 2, 2008), the court refused disallowance because there was no timely avoidance claim, and thus the transfer was no longer "avoidable." As discussed above, the FAC states plausible avoidance claims. In *Matter of Davis*, 889 F.2d 658, 661–63 (5th Cir. 1989), the Fifth Circuit reversed the district court's dismissal of the IRS's claims against the debtor's estate under 502(d) because the district court invoked 502(d) after only giving the IRS five days after the judgment adjudicating the IRS's liability. The court did not impose a precondition that avoidance liability and a disallowance claim be sought sequentially.

28

## V.   THE COURT SHOULD ALLOW THE TRUSTEE THE OPPORTUNITY TO AMEND IF THE COURT DETERMINES TO DISMISS THE TUFTA CLAIM AGAINST TENET.

The MTD is the first challenge to the sufficiency of the allegations about the Tenet claim at the outset of this action. As explained above, the Trustee's allegations are sufficient. But if not, leave to amend would be appropriate under Rule 15. Rule 15(a)(2) (courts should "freely give leave when justice so requires"); *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590–91 (5th Cir. 2016) (holding that a party requesting amendment need only "set forth with particularity the grounds for the amendment and the relief sought"; reversing district court's denial of leave to amend where plaintiff described proposed grounds for amendment without filing proposed amended pleading) (citing *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 330–31 (5th Cir. 2003)). There would be no undue delay or prejudice to Tenet. Tenet's claim that leave would be futile because of its extra-complaint documents fails for the same reason explained above: those documents cannot be considered to address the sufficiency of any pleading under Rule 8.

If amendment is necessary, the Trustee could add the following allegations, among others, that would address the MTD's arguments:

- In the alternative to the allegations regarding SHC System having inadequate assets before the Tenet Transaction, SHC System's assets became inadequate because of the Tenet Transaction, which required SHC System to take on additional expensive debt and overpriced lease obligations.

- That SHC System did not receive reasonably equivalent value for the $1.1 billion it paid for the Miami Hospitals and their operations is confirmed by the fact that Tenet claimed in a 10-Q dated July 30, 2021, that the value of the Miami Hospitals was $683 million—over $400 million less than SHC System paid.

- SHC System's financial advisor for the Tenet Transaction, KPMG, informed SHC System before the transaction's close that the Miami Hospital business' true historical EBITDA was 25% lower than the EBITDA numbers SHC System relied on in agreeing to the $1.1 billion price. Under the same EBITDA multiples SHC System used, based on these historical EBITDA numbers, the Miami Hospitals were worth 25% less than what SHC System paid.

29

- Additionally, KPMG advised SHC System that an additional factor would make the Miami Hospital business worth far less to SHC System than was indicated by the Miami Hospital business' historical EBITDA. KPMG estimated that the business' EBITDA when operated by SHC System would be $22.9 million to $43.9 million lower annually, with a mid-point estimated reduction of $33.4 million, than when operated by Tenet given the reimbursement terms in SHC System's insurance contracts. However, SHC System's pricing for the acquisition did not account for this factor even though its pricing was based on the business' historical and expected earnings. Because of this, SHC System agreed to pay far more for the Miami Hospital business than the business was worth to SHC System.

- The $900 million MPT paid for the Miami Hospitals real estate did not reflect the value of the real estate. A sale-leaseback price reflects negotiated contract rent (and other financing considerations)—not what a third-party buyer would pay for the real estate absent that tenant-specific financing structure. Treating the sale-leaseback proceeds as a market indicator conflates financing economics with real estate value. A real-estate only valuation analysis would find that the Miami Hospitals real estate was worth far less than $900 million.

Thus, the MTD should be denied, but in no event could a denial justly be with prejudice and without leave to amend.

## VI.  THE CLAIMS AGAINST TENET CANNOT BE DISMISSED BASED ON ALLEGED IMPROPER JOINDER.

Tenet's request for dismissal for improper joinder (*see* MTD at 36–37) fails because Rule 21 does not permit dismissal. Rule 21 provides (emphasis added):

> ***Misjoinder of parties is not a ground for dismissing an action***. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party.

*See also Pac. Century Int'l, Ltd. v. Does 1-37*, No. CV H-11-4430, 2012 WL 13055464, at *1 (S.D. Tex. Mar. 27, 2012) (noting that "the remedy for improper joinder is severance and not dismissal"; quoting *Arista Records LLC v. Does 1-19*, 551 F. Supp. 2d 1, 11 (D.D.C. 2008)). Even the cases cited in the MTD grant severance, not dismissal. *See, e.g., Stewart v. Texas Tech Univ. Health Scis Ctr.*, 741 F. Supp. 3d 528, 558–59 (N.D. Tex. 2024) (noting that misjoinder is not grounds for dismissal).

While courts cannot dismiss for improper joinder, sometimes they sever misjoined claims. Because Rule 21 does not provide any standards for assessing misjoinder, courts have looked to Rule 20 for guidance. *See Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010). Rule 20(a)(2) provides that persons may be joined as defendants if

> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and

> (B) any question of law or fact common to all defendants will arise in the action.

Courts in the Fifth Circuit have "described Rule 20 as creating a two-prong test, allowing joinder of the defendants when (1) their claims arise out of the 'same transaction, occurrence, or series of transactions or occurrences' and (2) there is at least one common question of law or fact linking all the claims." *Imperium (IP) Holdings, Inc. v. Apple Inc.*, No. 4:11-CV-163, 2012 WL 461775, at *2 (E.D. Tex. Jan. 20, 2012), *report and recommendation adopted*, No. 4:11-CV-163, 2012 WL 461802 (E.D. Tex. Feb. 13, 2012) (citing *Acevedo*, 600 F.3d at 521).

The Trustee made Tenet a defendant to the FAC for the sake of judicial efficiency. However, the Trustee agrees that the Tenet Transaction is just one episode in a series of separate transactions that form the basis for the Trustee's claims, and so the Fifth Circuit's two-prong test is not met. The Trustee and Tenet are currently negotiating a stipulation that will allow the claims against Tenet to be severed into another action without delaying the progress of the litigation.

## CONCLUSION

For all the reasons stated above, the Court should deny the MTD. If the Court determines to dismiss the Trustee's claim against Tenet, the Trustee requests that the Court give the Trustee

leave to amend the FAC.[10]

Dated: March 6, 2026                    Respectfully submitted,

                                        By:   /s/ *William T. Reid IV*
                                        William T. Reid IV (Tex. Bar No. 00788817)
                                        (S.D. Tex. Bar No. 17074)
                                        *Attorney-in-Charge*
                                        Jeremy Wells (Tex. Bar No. 24098805)
                                        (S.D. Tex. Bar No. 3081661)
                                        Dylan Jones (Tex. Bar No. 24126834) (*pro hac vice*)
                                        Taylor Lewis (Tex. Bar No. 24138317) (*pro hac vice*)
                                        Julia Gokhberg (Tex. Bar No. 24144450) (*pro hac vice*)
                                        **REID COLLINS & TSAI LLP**
                                        1301 S. Capital of Texas Hwy.
                                        Building C, Suite 300
                                        Austin, Texas 78746
                                        Tel: (512) 647-6100
                                        wreid@reidcollins.com
                                        jwells@reidcollins.com
                                        djones@reidcollins.com
                                        tlewis@reidcollins.com
                                        jgokhberg@reidcollins.com

                                        Eric D. Madden (Texas Bar No. 24013079)
                                        (S.D. Tex. Bar No. 29231)
                                        J. Benjamin King (Texas Bar No. 24046217)
                                        (S.D. Tex. Bar No. 605914)
                                        Richard Howell (*pro hac vice*)
                                        **REID COLLINS & TSAI LLP**
                                        1601 Elm Street, Suite 4200
                                        Dallas, Texas 75201
                                        Tel: (214) 420-8900
                                        emadden@reidcollins.com
                                        bking@reidcollins.com
                                        rhowell@reidcollins.com

                                        Jeffrey E. Gross (*pro hac vice*)
                                        Yonah Jaffe (*pro hac vice*)
                                        **REID COLLINS & TSAI LLP**
                                        420 Lexington Avenue, Suite 2515
                                        New York, NY 10170
                                        Tel.: (212) 344-5200

---

[10] The Trustee is not aware of any rule limiting the length of this opposition brief. In any event, as Tenet noted in its Unopposed Motion for Briefing its Motion to Dismiss Plaintiff's Amended Complaint (Dkt. 85, ¶6), Tenet agreed not to object to the Trustee filing a brief 40 pages in length.

jgross@reidcollins.com
yjaffe@reidcollins.com

*Counsel to Mark Kronfeld, as Trustee of the
SHC Credit Litigation Trust*